United States v. Wilson Ms. Bennett, good morning. You are reserved two minutes for rebuttal. Yes, thank you, Your Honor. You may proceed. Good morning, Your Honors. May it please the Court? I'm Megan Bennett. I represent Defendant Appellant Robert Wilson on this case. Mr. Wilson challenges the imposition of the conditions of supervised release in connection with his December 2022 sentencing. He specifically challenges the conditions of release on two grounds. First, because the district court generally failed to sufficiently orally pronounce any of the non-mandatory conditions other than the three special conditions, which the deputy read into the record. And second, with respect to those three special conditions, the district court failed to offer any justification for the imposition of those conditions of release. Well, can I ask why this wasn't waived? I mean, it seemed to me the argument below was he'll take any conditions. He wants supervised release in lieu of a prison sentence. And so this seems to be one of those situations where a party actively solicits or agrees to a course of action that he later claims was error. Respectfully, Your Honor, that's not what transpired at the district court. What the defense attorney said at the time was that Mr. Wilson will, of course, comply with any conditions of supervised release. That's at page A82 of the appendix. He says that the defense counsel says that when Mr. Wilson is released, and hopefully that is today, he will live a law-abiding life and comply with any of the conditions. And he states at page A85, my request, as I put in my papers, is that the court sentence him to time served with a period of supervised release to be determined by the court. Those are the only references to supervised release. There's no question. Wait a second. You skipped 84, which at least with respect to the mental health condition- Yes. Counsel says he'll be in treatment for his head injury, for his other health problems, and for his mental health issues at the VA. And that could also be a condition of supervised release. So why would, at least with respect to the mental health condition, isn't that a true waiver? Well, first, I wouldn't say it was a true waiver, but I would concede that it's positioned differently than the other conditions of release. Certainly the standard conditions, the standard non-mandatory conditions, I don't think there's any viable argument as to waiver on those. As to the three special conditions, I believe that the mental health condition is situated differently than the financial disclosure. Or contacting victims? Wasn't that a specific suggestion by counsel, that he won't attempt to come back to the courthouse or have any contact? He says that it won't, not in the context, Judge Levin, not specifically in the context of supervised release. What defense counsel says is that he won't come back to, there's not going to be an issue of him coming back to the courthouse. You could read that in the context of the entire sentencing transcript, and perhaps it's not an unduly strained reading to say that that was meant to connect to the conditions of supervised release, but it's not as closely intertwined with supervised release as the comment about mental health treatment that Judge Nathan identified. But I think even if there is a question about waiver as to that single condition, and this court has held, obviously, as has the Supreme Court, a true waiver requires a knowing and intentional relinquishment, an intelligent and knowing relinquishment of a known right. Intelligent and voluntary relinquishment of a known right. In this case, you don't have the sort of record evidence that this court has relied on generally in finding true waiver cases. It's not like the Quinones case where defense counsel's argument to the jury was that, don't impose the death penalty because my clients are going to be mandatorily sentenced to life, and then challenges that the mandatory life sentence, as it turns out, wasn't mandatory. Or even in Overstreet or Bartley, which this court summarily affirmed last week, which was a case of mine where you had record evidence that the district court judge at sentencing identified the specific conditions of release that were set forth in a document that the defendant had an opportunity to review with defense counsel prior to sentencing. Here, the PSR doesn't contain any proposed conditions of supervised release. There are no conditions of supervised release that are discussed in either the defense or the government sentencing memoranda. It doesn't come up at the plea colloquy, just the fact of supervised release, but not the conditions. Well, the special conditions were read aloud, and there was no objection, right? They are read aloud at the tail end of the sentencing proceeding. There's no prior notices to the special conditions. A request as to whether there is any objection, right? Well, of course, the defendant does say that he objects, but there is a question at the end of the sentencing proceeding at the time at which the judge has said, from page A29, line 12 of the appendix to 31 at 5 of the appendix, that is the intended sentence. Does either side take any legal objection or exception to it? To which defense counsel says no. I don't think it's reasonable to read that statement as a true waiver of any challenge to the full scope of the nonmandatory conditions of supervised release. So even if we're under forfeiture for the special conditions, then would you agree the question is whether it's self-evident on the record why these would be imposed? Well, I think that's a good question. In Sims, which is a case that Judge Nathan, you were on earlier this year, the court said that the district court judge, and that was the special association condition, this court said that for the imposition of special conditions of supervised release to be procedurally reasonable, a district court must make an individualized assessment when determining whether to impose a special condition of supervised release and state on the record the reason for imposing it. And any explanation provided by the court must be adequately supported by the record. So I would say that simply having the deputy read the special conditions in and then looking at the record without any judicial explanation for the balancing test that has to be part of the exercise. But we definitely have cases both before and after Sims that ask in the context of forfeiture whether or not there's a self-evident basis for the condition on the record, don't we? Yes, and if this court were to review the record to see if there was a self-evident basis, I would say that in this case arguably there's a self-evident basis on the communication restriction, but the financial restriction has no connection to the facts of this case and is so attenuated from Mr. Wilson's criminal history which involved a felony conviction for fraud 20 years earlier and two relatively minor misdemeanor fraud larceny convictions more recently. There is no connection to the offense conduct here and there is nothing in the history and characteristics of Mr. Wilson himself other than those very attenuated prior convictions that can justify the serious intrusion that is intended to the special condition on the financial requirements. Isn't it evident in the record that the mental health condition was called for? The mental health treatment condition was called for. So Judge Reyes, I think it is evident from the record that Mr. Wilson is in need of mental health treatment. Whether it's self-evident that that has to be a condition of supervised release I think is an open question. Obviously once something is made a condition of supervised release, the individual is at heightened risk of potential consequences for not following through on that condition and the risk of being violated by his or her probation officer. So I think that there's a different question. Does he have a history of failing to comply? This offense conduct was the result of an episode in which he had sort of spiraled out for a confluence of factors, but since the offense conduct there had been a significant period of time. He was remanded from pretrial custody specifically for mental health treatment and during the period of time that he was on pretrial supervised release, he was fully compliant with his mental health treatment. So I think it's self-evident from the record that he needs mental health treatment. I don't think it's self-evident that that has to be a condition of supervised release. All right. Will you reserve two minutes for rebuttal? We'll now hear from Mr. Rush. Am I pronouncing that right? Yes, Your Honor. Good morning and may it please the court. My name is Andrew Rush and I represent the government in this case and I represented the government in the proceedings below as well. The district court's judgment imposing standard and special conditions of supervised release should be affirmed. Having implored the district court for a thorough supervised release regime in lieu of a greater custodial sentence, Wilson now objects to every single condition of supervised release imposed by the court, including special conditions that he himself proposed or referenced, that were read to him at sentencing, that were justified by the record, and to which he stated he had no objection. What do you think we should do with the defendant's own statement on the record of objection seemingly at least to the financial conditions? I mean, he's represented so maybe the argument is we don't consider it. What is the government's view? Is Your Honor referring to the defendant's objections himself as opposed to from his counsel?  Your Honor, the court rightfully observed that those were not legal objections to the sentence. This is not a pro se case. The defendant was represented by experienced federal defender in our district and when the court provided the defendant an opportunity to object to the sentence, the experienced federal defender representing him specifically stated that there was no objection. There were a number of comments, Your Honor, from the defendant himself throughout the proceedings. The government notes that at appendix 98 through 101, the defendant makes a number of comments about politics generally and other issues not related to the case. And the district court rightfully observed that those were not legal objections to the sentence and instead went with what his representative, his counsel, had relayed to the court. Your Honor, in December 2022, Wilson pled guilty to assaulting and injuring a federal officer at the Eastern District Courthouse in Central Islip, New York. And prior to that, he had a long history of assaults and financial frauds and threatening public servants. At sentencing, counsel advocated for a sentence of time served and repeatedly invited the district court to implement a thorough supervised release regime in lieu of a longer custodial sentence. Counsel even recommended and referenced specific conditions of release that the district court could impose should it grant his request. That strategy was successful. The district court imposed a custodial sentence that was only six months greater than time served and the maximum amount of supervised release with three special conditions, including the two that Wilson proposed. Those conditions were pronounced on the record, word for word, and counsel stated that Wilson had no objection to them. It's also important to note that the district court stated that it would have actually given an above guideline sentence, but it believed that rehabilitation through, among other things, the mental health treatment condition proposed by counsel and other arguments made by counsel demonstrated that there could be a successful approach here based on supervised release as a key element of the sentence, just as counsel had argued, and that's in the record at Appendix 92. So in the first instance, Your Honors, Wilson waived his challenges to his release conditions when he recommended to the sentencing court that the very conditions he now challenges and made a calculated and successful decision to argue for a strong supervision regime in lieu of a longer custodial term. And this court observed in the Spruill case, citing a Tenth Circuit case, Teague, that where a defendant through counsel proposed and agreed to conditions of supervised release, the defendant could not appeal those conditions. And moreover, just as in the Overstreet case decided by this court, counsel stated absolutely clearly on the record that he had no objections immediately after the special conditions were pronounced. That included the two special conditions that he himself referenced or proposed, as well as the financial condition that was read word for word. And of course, all three conditions appear exactly as they were stated on the record during sentencing in the judgment. Wilson also waived his challenges to the standard condition, the standard conditions. This court has stated that waiver may be found where the court can infer a party's decision to waive from the circumstances, and that's in the Perez case, citing Kunin. There can be no doubt here that Wilson's experienced federal defender was aware of those conditions and intentionally chose not to waive them. This court has explained in Williams and other cases the difference between forfeiture You said intentionally chose not to waive them? I'm sorry, Your Honor. Intentionally chose not to object to them. This court has explained in Williams and other cases the difference between forfeiture of an objection and waiver of an objection. The former has been described by this court as when a party falls asleep at the wheel. The latter has been described as what happens when a party chooses not to make an objection. It strains reason beyond its breaking point, I submit, to imagine that his experienced counsel in this case, whose chief argument at sentencing was supervised release as a pathway to rehabilitation and who even proposed certain conditions of that supervised release, failed to object to standard supervision conditions simply by mistake or oversight. He meant for them to be imposed, and they were, in fact, implicit in his arguments. Next, the district court was not required to orally pronounce each standard condition of supervision that are routinely imposed in this circuit, and it did not commit error when it followed longstanding binding Second Circuit precedent to that effect under Trussello and its progeny, including Jacques, Asuncion-Pimentel, and scores of other cases. Nor was the sentencing court required to provide on-the-record justifications for conditions that it was not required to pronounce in the first place, and that's the Myers case, quoting Trussello, as well as the Bryant case, though in any event, Your Honors, each of those conditions was amply justified here by the record and set forth in the government's brief. None of the standard conditions imposed was vague or overbroad or impermissibly delegated authority to the probation department, and the substantive challenges to those longstanding boilerplate conditions, which are crucial to the proper functioning of the supervised release, cannot withstand plain error review, which is the applicable standard here. Lastly, the district court met its obligations when it orally pronounced the special conditions of Wilson's supervision at sentencing. The justifications for those conditions were sufficiently articulated by the district court and in any event, were self-evident from the record. District courts have broad discretion in imposing special conditions of supervised release, and they need not recite the specific justification for each if it is clear on the record, as was the case here. In the first instance, two of the special conditions, as I mentioned, were recommended conditions under the guidelines, and thus, no particularized justification was required, but in any event, the district court did articulate its justifications for all three throughout its detailed colloquy at sentencing, and the record otherwise provided ample support for their imposition. With respect to the mental health treatment condition, this condition was proposed by Wilson, and he concedes in his brief that it was grounded in the record. His mental health history was discussed at length during sentencing, as well as in the pre-sentence report and sentencing submissions, and it was a key consideration identified for the court in its sentence, and that's at Appendix 94 to 95. The victim contact condition was also referenced and supported by Wilson at sentencing, and merely requires that he refrain from contacting his victims of his violent assault. That one is evident and clear. And lastly, the financial condition was recommended by the guidelines under the circumstances present here, including under restitution imposed on a schedule, but it was also clear from the record, which discussed in detail, his long history of financial swindles, misappropriation of funds, issuing bad checks, larceny, and other things that were specifically cited by the district court. And so his challenges to those conditions also cannot withstand plain error review, which is the applicable standard here. For all these reasons, the court should affirm the district court's judgment, and if there are no further questions, I will rest on the government's submissions. Thank you very much, Mr. Reich. We'll hear now from Ms. Bennett for two minutes of rebuttal. Thank you, Your Honor. In no universe should the challenge to the standard conditions here rest on plain error review. There was never an opportunity for Mr. Wilson to be on notice about the standard conditions of release. Well, the issue is not, I think, Mr. Wilson. I think it's whether counsel waived them, right? It's a constitutional right that belongs to Mr. Wilson. There is nothing on the record to suggest that Mr. Wilson had any conversation with his attorney. I want to be clear with this. If you or your predecessor counsel had said, judge, give him supervised release instead of jail, he'll gladly accept the mandatory standard and any special conditions that you impose. Would that be sufficient for a waiver? The conditions of release are. Just answer my question. Would that be sufficient for a waiver? If the defendant is on notice as to what those conditions are, yes, it should be the same. I had the same argument a week ago. Judge Merriam suggested something along the lines of when a defendant waives a right to have an indictment read in court. What is the colloquy with the judge? Have you had an opportunity to read this indictment? Have you gone over it with your attorney? Do you understand the terms of it? Have you had an adequate opportunity to consider each element of it? Would you please just answer my question? Do you waive? I think you have to ask the defendant. Do you waive? Ms. Bennett, let me. The question is, if counsel said he will gladly accept the mandatory conditions of supervised release set forth in the statute. That's right. So 3583D. 3583D. And the standard conditions recommended by U.S. Sentencing Guidelines Section 5D1.3C. Would that be sufficient for a waiver? I think that that could be sufficient for a waiver.  So what would have to happen? You need to make sure. You'd have to put the defendant on the stand to make sure? Put him under oath to see that he understood? He's under oath already at sentencing. He's sworn at the sentencing hearing when he's communicating with the court. So he should, yes, he should have an opportunity to say. So a lawyer can't waive this. You're saying it has to be the client who does, who makes these statements. I think the attorney can waive it if there's a colloquy with the court that assures the judge that the defendant. And it's the same as with the waiver of the indictment. It's not just the attorney who says, I waive the public reading of the indictment. The court asks the defendant, do you agree to waive the public reading of the indictment? Yes, I do. If the court had asked defense counsel, did you review the standard conditions of release, which are set forth in sentencing guideline 5B1.3C, and have you had an opportunity to discuss those with your client, and does he waive any public discussion of those specific conditions? Yes, I think then you would have a waiver. But here, there wasn't even any notice on the record prior to the written judgment that there would be the imposition of standard conditions. What would be the principle for that requirement, as opposed to the just unreviewable list of things that defense counsel will waive on the record on behalf of their clients without a formal allocution and colloquy? Well, can you give me an example? Well, I mean, during trial, setting aside the right to testify, but any number of issues, or pretrial, or, I mean, all of the judgment calls that defense counsel make, including strategically not raising issues, what would be the basis for distinguishing this from those? I think the basis for distinguishing this is that the right to have, the defendant's right to have the sentence orally pronounced to him is derived from his Fifth Amendment right to be present at this stage of the proceedings, and courts have routinely held, this court and the Supreme Court have held, that the imposition of conditions of release are a component of the criminal sentence that's being imposed on the defendant. And so for him to proceed without, you know, you could... I mean, in Trussello, we say they don't have to be read. In Trussello, so to go back to Trussello, it was a case, it was 1998. It was when the guidelines were still mandatory. I think there is a reading of Trussello that is consistent with the theory that a defendant doesn't, that a court doesn't need to read into the record the standard, sorry, the mandatory, statutorily mandatory conditions because the defendant has no basis to object to those, has no opportunity to challenge those given that they are statutorily mandatory. When Trussello was decided and the guidelines were not yet advisory, there is an argument that those standard conditions set forth in the guideline were not just imposed as a matter of course, but were part of what the courts at the time considered the mandatory sentencing regime as guided, as driven by the sentencing guidelines. We have argued that this court also, in the alternative, should consider revisiting Trussello, given the significant weight of its sister circuits, and returning to a process in which a defendant is put on actual notice of the conditions of release, which could be done in a mini en banc proceeding here. I know that there have been a number of these cases that have been briefed and argued before various panels, and it seems to me, I believe this is a good vehicle to do so, perhaps not with respect to the special conditions where there is that colloquy, but this is a record that has no evidence to suggest that Mr. Wilson had any notice of the significant number of standard conditions of release. But that would be a basis for an ineffective assistance claim, wouldn't it? I mean, if he's saying that he had no clue, his lawyer didn't tell him a thing, and that he would have objected, I think that would typically be something that is covered by that. Well, that's a good question. Do you have standing to bring a habeas proceeding if you are no longer in physical custody? Well, I'm just saying as a general matter, this general proposition that you seem to be saying that a court has to do, effectively, a Rule 11 colloquy with respect to arguments not made concerning conditions of supervised release or facts, I suppose, every particular fact that's in a PSR. Do you have to get a colloquy with the defendant as to whether he agrees that each of these things is true? So I don't think you need to go through a colloquy as to each factual paragraph in a PSR, although I will note, and all three of you have significant experience with sentencing, in my experience, the courts always ask the defendant if they've had an opportunity to review the PSR with their attorneys and ask the attorneys if you have any objections to the factual sections of the PSR. So I'm not saying that a court is obligated to do that, but it does seem like best practices, and it does seem, effectively, how sentencings unfold. But this is not the same. The conditions of supervised release are different because they are a part of a criminal sentence. I don't think that this should be a habeas proceeding because I'm not sure Mr. Wilson's lawyer should be, that there's a viable argument that he was ineffective for failing to object to conditions of release that he wasn't on notice were going to be imposed until the written judgment was entered. I think this is a vehicle in which a direct appeal is the appropriate method to address the current practice within this circuit of imposing 13 standard non-mandatory conditions of release, many of which involve a significant deprivation of an individual's liberty interest, whether it's their right to travel, their association rights, their rights to be free from... I think we're all familiar with what they are. You're not disputing that counsel was unaware of what they are, right? I don't know one way or the other. It wasn't defense counsel. I doubt that he was unaware. Are you aware of any sentencing that happens in this district in which the standard conditions of supervised release are not imposed, where a term of supervised release is imposed within this circuit? I certainly haven't had that experience, but in the Southern District, which is where I practice, we get in our PSRs... They're included in the PSR. They're included in the PSR, so we review them with our clients ahead of time. We have an opportunity to discuss them with our clients ahead of time. In the Eastern District, where they're not included in the PSR, I think, again, this goes back to the fact that the defendant has a constitutional right to be present at his sentencing. These conditions of release are non-mandatory. He has a right to be able to challenge them. He is deprived of that right if he is not put on notice of those conditions of release at the time of his sentencing hearing. All right. Well, we will end there. Thank you both. We will reserve decision.